```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS
                                          )
APARICIO GUTIERREZ-SANCHEZ                )
                                          )
          v.                              )    CIVIL NO. 05-10499-NG
                                          )
UNITED STATES OF AMERICA                  )
                                          )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE**

The United States, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant U.S. Attorney William D. Weinreb, respectfully submits this opposition to defendant Aparicio Gutierrez-Sanchez's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on grounds of ineffective assistance of counsel. Gutierrez claims that his trial counsel, Robert Carmel-Montes, Esq., was ineffective for failing to file a notice of appeal. But the Supreme Court has held that a lawyer's failure to notice an appeal is not professionally unreasonable so long as he consults with his client about the issue and does not disregard an express instruction to file an appeal. Gutierrez does not allege that Mr. Carmel-Montes failed to consult with him about an appeal or disregarded an express instruction to file an appeal, and Mr. Carmel-Montes has submitted an affidavit attesting that he did in fact consult with Gutierrez and received no express instruction to file an appeal. Since Gutierrez bears the burden both of production and proof on this issue and has offered no evidence whatsoever, his motion is fatally deficient and must be denied.

## BACKGROUND

1. <u>The Rule 11 hearing</u>.  On August 1, 2002, Gutierrez and nine others were charged by indictment with conspiracy to distribute, and to possess with intent to distribute, heroin, cocaine, and MDMA.  <u>United States</u> v. <u>Aparicio Gutierrez-Sanchez et al.</u>, Crim. No. 02-10335-NG.  On March 25, 2004, Gutierrez pleaded guilty pursuant to a plea agreement.  The parties stipulated in the agreement that Gutierrez was personally responsible for approximately 2.4 kilograms of heroin, approximately 2.2 kilograms of cocaine, and approximately three kilograms of MDMA.  The parties also stipulated that the government would seek a four-level leader/organizer adjustment pursuant to USSG §3B1.1 and that Gutierrez reserved his right to oppose that request.

2. <u>The offense conduct</u>.  The offense conduct section of the PSR reflects that in the summer of 2002, the FBI intercepted hundreds of drug-related conversations over Gutierrez's two cell phones.  PSR ¶ 3.  Many of the conversations were between Gutierrez and two men in the Dominican Republic known respectively as "Punala" and "Morenito."  <u>Id.</u> ¶ 14.  The calls revealed that Gutierrez routinely obtained large quantities of heroin from these two men for resale in the United States.  <u>Id.</u>

Shortly after the wiretap investigation commenced, "Punala" offered to supply Gutierrez with a kilogram of heroin if Gutierrez could find the money to pay for it and a courier

willing to smuggle it into the United States.  PSR ¶¶ 20-57.  Gutierrez enlisted two codefendants, Sergio Cruz and Solangie Rivera, to find and supervise a courier.  Id.  Rivera, who was in the Dominican Republic, found a courier, but the courier did not want to go to "Punala's" location and "Punala" did not want to bring the drugs to the courier's location; Gutierrez, who remained in Lynn, tried to resolve this impasse through numerous phone calls to Rivera and "Punala" but ultimately failed.  Id.  Gutierrez then asked Cruz to find another courier.  Id.  Cruz found Lorenzo Ozoria-Alvarez, and Gutierrez sent Ozoria to the Dominican Republic to meet with "Punala."  Id.  Ozoria swallowed nearly a half kilogram of heroin before flying back to the United States.  Id.  Unknown to Gutierrez, Customs agents stopped Ozoria at Logan Airport and recovered the drugs.  Id.  At Gutierrez's request, Cruz and Rivera attempted to find out what had happened to Ozoria.  Id.

Gutierrez also obtained heroin and cocaine from suppliers in New York City.  PSR ¶¶ 77-87.  Gutierrez sometimes used codefendant Shirley Baez to negotiate with these suppliers and/or to assist him in taking delivery of the drugs.  Id.

In early July 2002, Gutierrez and codefendant Miguel Molina recruited unindicted coconspirator Wayne Nute to smuggle 20,000 ecstasy pills into the United States from Amsterdam.  PSR ¶¶ 88-101.  While Nute was overseas collecting the pills, Gutierrez attempted to recruit an undercover FBI agent to make a similar

3

trip.  Id.  After Nute was arrested in Europe by French authorities, Gutierrez and Molina tried to figure out what happened to him.  Id.

The PSR found that these facts warranted a four-level upward adjustment to Gutierrez's base offense level pursuant to USSG § 3B1.1(a) "[b]ecause of the defendant's significant role in planning and organizing the criminal activity" of which he was convicted.  PSR ¶ 111.

3.  The sentencing hearing.  At the June 18, 2004 sentencing hearing, Gutierrez did not challenge any of the facts in the PSR.  He did, however, argue that he did not deserve a four-level upward adjustment under USSG § 3B1.1(a) for being an organizer or leader, but rather deserved only a three-level upward adjustment for being a manager or supervisor.  His chief argument was that "Punala" and "Morenito" were the true organizer/leaders because they controlled the supply of heroin from the Dominican Republic and Gutierrez effectively worked under them.

The government argued that regardless of the roles played by "Punala" and "Morenito," Gutierrez was an organizer/leader of the heroin conspiracy because he purchased the heroin from the Dominican Republic-based suppliers, hired couriers to smuggle it into the United States, and sold it to customers; he recruited others (e.g., Sergio Cruz and Solangie Rivera) to assist in that operation; he paid for the drugs and the couriers and stood to profit from the sale of the drugs; and he oversaw the entire

4

operation by telephone.

After hearing argument from both sides, the Court found that Gutierrez was in fact an organizer/leader within the meaning of USSG § 3B1.1(a).  That meant Gutierrez's total offense level was 35 as opposed to 34, and his sentencing guidelines range was 188-235 months as opposed to 168-210 months.  The Court sentenced Gutierrez to 188 months' imprisonment.  Gutierrez's attorney did not file a notice of appeal on his behalf.

Gutierrez now claims that Mr. Carmel-Montes's failure to file a notice of appeal constitutes ineffective assistance of counsel.  The sole basis for his claim is that the Supreme Court decided <u>Blakely</u> v. <u>Washington</u>, 124 S.Ct. 2531 (2004), three days after he was sentenced.  Gutierrez appears to believe that the <u>Blakely</u> decision provided him with new ammunition to challenge the leader/organizer determination on appeal.

Gutierrez's motion lacks merit and must be denied.  Whether to appeal was a decision that had to be made by Gutierrez, not his lawyer.  Mr. Carmel-Montes's only duty was to consult with Gutierrez about that decision and to follow any instructions Gutierrez gave him (i.e. to appeal or not appeal).  Because the decision whether to appeal belonged to Gutierrez, Mr. Carmel-Montes was not ineffective unless he failed to consult with Gutierrez about that decision or failed to follow Gutierrez's express wishes.  Gutierrez does not allege that Mr. Carmel-Montes failed to do either thing, and Mr. Carmel-Montes has submitted an

5

affidavit attesting that he did in fact consult with Gutierrez and never received instructions to file an appeal. Since Gutierrez bears the burden of proof on this issue, his motion is fatally deficient and must be denied.

Also, Gutierrez appears to misunderstand the significance of the <u>Blakely</u> case. Neither <u>Blakely</u> nor <u>United States</u> v. <u>Booker</u>, 125 S.Ct. 738 (2005), provided defendants with new ammunition to challenge district court determinations of sentencing factors such as role in the offense. (<u>Blakely</u> was believed by some to create such new ammunition, but the Supreme Court rejected that reading of <u>Blakely</u> in <u>Booker</u>.) Although <u>Booker</u> held that the guidelines as a whole are advisory rather than mandatory, that case was not decided until six months after Gutierrez was sentenced, and Mr. Carmel-Montes cannot be deemed constitutionally ineffective for a lack of prescience.

## ARGUMENT

In <u>Roe</u> v. <u>Flores-Ortega</u>, 528 U.S. 470 (2000), the Supreme Court decided the proper framework for evaluating a claim of ineffective assistance of counsel based on a lawyer's failure to file a notice of appeal. Because the decision whether to appeal must be made by the defendant, not his lawyer, <u>see</u> <u>Jones</u> v. <u>Barnes</u>, 463 U.S. 745, 751 (1983), the Sixth Amendment requires only that the lawyer consult with his client and follow the client's wishes respecting an appeal. <u>Flores-Ortega</u>, 528 U.S. at

478. Even where "counsel has not consulted with the defendant" about an appeal, moreover, he is not ineffective unless "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 478-80.

Gutierrez nowhere alleges in his motion or supporting memorandum that Mr. Carmel-Montes failed to consult with him about an appeal or disregarded his wishes respecting an appeal. The absence of such allegations constitutes a fatal defect in his claim. Gutierrez is required by Rule 2 of the Rules Governing Section 2255 Proceedings to "state the facts supporting each ground" for relief, and he bears the burden of proof on the question of ineffective assistance, see Scarpa v. DuBois, 38 F.3d 1, 8-9 (1st Cir. 1994). Because Gutierrez has failed even to allege the required factual predicates for a claim of ineffective assistance based on failure to appeal, his claim is deficient and must be denied. (Mr. Carmel-Montes, for his part, attests that he did in fact consult with Gutierrez about an appeal but received no instructions to file one)

Even assuming, moreover, for the sake of argument, that Mr. Carmel-Montes had failed to consult with Gutierrez about whether to appeal, Gutierrez still could not prevail on his claim of

ineffective assistance. That is because Gutierrez cannot show that "a rational defendant [in his situation] would [have wanted] to appeal" or that he "reasonably demonstrated to counsel that he was interested in appealing." Flores-Ortega, 528 U.S. at 479-80. Gutierrez pleaded guilty and contested only a single issue at sentencing, namely, whether he was a leader/organizer or merely a manager/supervisor of the offense within the meaning of USSG § 3B1.1. The standard of review for a district court's determination of role in the offense is clear error. United States v. Garcia-Morales, 382 F.3d 12, 19 (1st Cir. 2004); United States v. Reyes, 927 F.2d 48, 49 (1st Cir. 1991). Where, as here, the uncontradicted facts provide ample support for the Court's finding that Gutierrez was a leader or organizer of the offense conduct, an appeal would have been pointless; it follows that a failure by Mr. Carmel-Montes to consult with Gutierrez about the issue would not have been professionally unreasonable.

To the extent Gutierrez believes that Blakely changed the standard for reviewing determinations such as role in the offense, or created new ways to challenge them, he is mistaken. Although some courts initially held that Blakely required sentencing factors to be alleged in the indictment and either admitted by the defendant or proved to the jury beyond a reasonable doubt, they turned out to be mistaken; and the Supreme Court has previously held that a lawyer is not ineffective even

if he makes an error that "deprived [the defendant] of the chance to have the . . . court make an error in his favor." Lockhart v. Fretwell, 506 U.S. 364, 371 (1993).

To the extent Gutierrez claims that Mr. Carmel-Montes was ineffective for failing to foresee (and perhaps to advise Gutierrez) that the sentencing guidelines would ultimately be declared unconstitutional, he is relying impermissibly on hindsight. The Supreme Court did not declare the guidelines unconstitutional until approximately six months after Gutierrez was sentenced. Courts have repeatedly held that a failure to anticipate a change in the law can almost never constitute ineffective assistance of counsel.[1] That is true "even if the claim based upon anticipated changes in the law was reasonably available at the time counsel failed to raise it" and "even when

---

[1] See, e.g., United States v. Ardley, 273 F.3d 991, 993 (11th Cir. 2001) (Carnes, J, concurring in the denial of rehearing en banc) ("In this circuit, we have a wall of binding precedent that shuts out any contention that an attorney's failure to anticipate a change in the law constitutes ineffective assistance of counsel."); Valenzuela v. United States, 261 F.3d 694, 700 (7th Cir. 2001) ("[O]ur cases provide that the Sixth Amendment does not require counsel to forecast changes or advances in the law.") (internal punctuation, citations omitted); Parker v. Bowersox, 188 F.3d 923, 929 (8th Cir. 1999) ("We have repeatedly held" that "failing to anticipate a change in the law . . . does not constitute ineffective assistance."); Gov't of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989) ("[T]here is no general duty on the part of defense counsel to anticipate changes in the law."); Alcorn v. Smith, 781 F.2d 58, 62 (6th Cir.1986) ("[N]onegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel").

the change is such that the forfeited issue was, in hindsight, a sure fire winner." United States v. Ardley, supra, 273 F.3d at 993 (citing numerous cases). In this case, it was far from clear in the days immediately following the Blakely decision that the sentencing guidelines would be held unconstitutional (Booker was, after all, a 5-4 decision); and even had Gutierrez raised a Booker challenge to his sentence on appeal, that claim would not have been a "sure fire winner." (Gutierrez would have received only plain error review in a case where this Court gave little or no indication on the record that it thought that Gutierrez's sentence was too high.)

In sum, Gutierrez's motion must be denied because (1) he has not alleged, let alone proved, that his lawyer failed to consult with him or disregarded his instructions about an appeal, and (2) there is no reason to believe that a rational defendant would have wished to appeal given the state of the law when the time for Gutierrez to file an appeal expired.

                              Respectfully submitted,

                              MICHAEL J. SULLIVAN
                              United States Attorney

                       By: /s/ William Weinreb
                              WILLIAM D. WEINREB
                              Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

    I, William D. Weinreb, Assistant U.S. Attorney, do hereby certify that I have caused a copy of the foregoing to be served by U.S. mail upon Aparicio Gutierrez-Sanchez, Prisoner No. 23512-038, FCI Fort Dix, P.O. Box 2000, Fort Dix, New Jersey 08640, this 10th day of June, 2005.

                                        <u>/s/ William Weinreb</u>
                                        WILLIAM D. WEINREB
                                        Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Crim. No. 02-10335-NG |
| APARICIO GUTIERREZ-SANCHEZ et al. | ) | |

### AFFIDAVIT OF ROBERT CARMEL-MONTES, ESQ.

I, ROBERT CARMEL-MONTES, Esq., do hereby depose and state as follows:

1. I am an attorney licensed to practice law in the Commonwealth of Massachusetts. Over the past seven years, I have represented dozens of defendants in criminal cases in federal and state courts in Massachusetts and elsewhere.

2. On or about August 2002, Aparicio Gutierrez-Sanchez retained me to represent him in the above-captioned case. I represented Mr. Gutierrez-Sanchez during all proceedings in that case, including sentencing.

3. After Mr. Gutierrez-Sanchez was sentenced, I informed him of his right to appeal, and I advised him of the advantages and disadvantages of filing an appeal. Mr. Gutierrez-Sanchez did not then, or at any later time, instruct me to file a notice of appeal on his behalf.

Signed under the pains and penalties of perjury

_____
ROBERT B. CARMEL-MONTES, ESQ.

Dated: 6-8-05